**OFFICE OF GARY J. MEYERS, FUND ADMINISTRATOR**  202 I 783 I 4884   FAX 202 I 393 I 6475
UNITED UNIONS BUILDING • 1750 NEW YORK AVENUE, N.W. • SUITE 501 • WASHINGTON, DC 20006-5301

December 12, 2005

Ms. Karen Bouthillette  
Service Contracting Inc.  
27 Oakdale Avenue  
Johnston, RI 02919

Code: S-4476  
LU #: 195

Dear Ms. Bouthillette:

Your company, Service Contracting Inc. (hereinafter "the Company"), is delinquent in contributions to the International Painters and Allied Trades Industry Pension Fund (hereinafter "the Fund") in principal of $15,012.10, and $113.71 in interest assessed through December 30, 2005 for the period of September 2005 through November 2005, for a total of $15,125.81.

Solely in consideration of the fact that if the Company is required to pay the full delinquency immediately it would endanger the financial stability of the Company, and hence the livelihood and pension credits and benefits of the participating employees, the Trustees of the Fund have agreed to permit you to follow the time payment plan outlined in this Promissory Note.

1. The total principal amount as set forth above, and interest accruing, amortized at six (6%) percent per annum, must be paid in full no later than August 15, 2006.

2. The principal and interest shall be paid at the rate of $1,722.94 **(to be overnighted)** per month, for 9 months, payable with each current remittance report submitted hereafter, or in any month in which a remittance report is not submitted, by the 15th of that month, until the entire debt has been paid.

3. The attached worksheet, marked Exhibit A, and incorporated herein by reference as though fully written herein, sets forth the total principal debt including interest, the required monthly payments, and their respective due dates. The Company agrees that Exhibit A represents the correct amounts owed this Fund.

4. The Company agrees that current remittance reports for all Union jurisdictions will be filed and contributions paid in the manner and within the time required by the Trustees of this Fund. If any further delinquency occurs from this date forward, either as to the debt previously incurred, or as to current payments, such delinquency will be deemed a breach of this agreement and the entire debt, including any amounts conditionally waived, will be due immediately. In that event, appropriate action may be immediately undertaken by the Trustees of the Fund or the Local Union or District Council involved, in accordance with the terms of the applicable Collective Bargaining Agreement and with the Agreement and Declaration of Trust.



EXHIBIT 3

Service Contracting Inc.
December 12, 2005
Page Two

### Promissory Note

4. For this agreement to take effect and if the Company agrees to these terms, **an authorized representative of the Company must sign the agreement in the presence of a notary and return the original agreement by,** December 30, 2005, along with one of the following: (1) a bond in the amount of the note, with the Pension Fund as the sole payee, (2) Assignment of Claims on a current job project, and proof of the assignment, (3) a **signed** personal guarantee, or (4) an irrevocable letter of credit from your bank.

5. The first installment of $1,722.94 must reach the Fund Office no later than, December 30, 2005 along with the current reports and contributions as defined on "Exhibit A."

6. Although the Fund Administrator, Gary J. Meyers, has signed this Promissory Note, the Company understands the terms of the Note are ineffective unless each item referenced in paragraph five is provided to the Fund Office.

Sincerely,

*[signature: Gary J. Meyers]*

Fund Administrator

The undersigned warrants and represents that he or she is a duly authorized representative of the Company, with full authority to bind the Company to this agreement. The undersigned and the Company agree that the foregoing constitutes a binding agreement between the Fund and the Company.

Signature: *[signature]*
Authorized Representative

Printed Name of Authorized Representative: KAREN K. BOUTHILLETTE

Title: PRESIDENT

S.S.#: 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

Company Name: SERVICE CONTRACTING, INC.

Sworn and subscribed to before me on this 12 Jan day of, 2006

*[notary signature]*
NOTARY PUBLIC

My commission expires Oct 31, 2009

Service Contracting Inc.
December 12, 2005
Page Three

## PERSONAL GUARANTEE
Promissory Note

I, __KAREN K. BOUTHILLETTE__, have read and understand the foregoing agreement. In consideration of the consent by the Fund to the agreement, I personally guarantee the payments that the Company has agreed to make, and agree as follows:

1. If the Company fails to comply with the agreement at any time, I will pay all contributions, delinquencies, and amounts specified in the agreement, that the Company owes to the Fund, within ten (10) days after receipt of a written demand for payment by the Fund. Delivery by first class mail to the following address shall be conclusive proof, though not the only means of proving my receipt of a written demand:

The address to which notice should be sent:

__27 OAKDALE AVE__
__JOHNSTON, RI 02919__

2. The Fund may demand payment from me at any time after a failure of compliance by the Company with this agreement, and I waive any defense of un-timeliness or dilatoriness against a demand for payment by the Fund.

3. If I fail to pay on the terms set out here, I shall be liable under the same terms, and to the same extent, as the Company and my liability shall include the contractual and statutory liabilities of the Company.

Signature: _Karen P. Bouthillette_
Printed Name of Personal Guarantor: __KAREN K. BOUTHILLETTE__
Home Address of Personal Guarantor: __115 OLD RIVER RD__
__Lincoln, RI 02865__

Home Telephone Number of Personal Guarantor: __401-996-0966__
Cell Phone # and Fax # of Personal Guarantor: —
Relationship of Personal Guarantor to the Company: __PRESIDENT__
Social Security Number of Personal Guarantor: __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__

Sworn and subscribed to before me on this __12__ day of __Jan__, 200__6__.

_____
NOTARY PUBLIC

My commission expires __Oct 31 2008__

# EXHIBIT A

Christopher G. FitzPatrick
Joseph A. Boyle
KELLEY DRYE & WARREN LLP
200 Kimball Drive
Parsippany, New Jersey 07054
Telephone: (973) 503-5930
Facsimile: (973) 503-5950

Charles B. Wolf (CBW-2850)
Philip L. Mowery (PLM-6925)
Alison J. Maki (AJM-3852)
VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.
222 North LaSalle Street
Suite 2600
Chicago, Illinois 60601
Telephone: (312) 609-7500
Facsimile: (312) 609-5005

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| FREDERICK J. HAESLER, JR.<br>111 Orleman Avenue<br>Oreland, PA 19075<br><br>SANDREENA<br>2225 Carlson Drive<br>Willow Grove, PA 19090-2212<br><br>WANDA BREWSTER<br>700 Lower State Road<br>Building 10 - Apt B-7 | Civil Action No. 2:05-cv-00372-JAG-GDH<br><br>Judge Joseph A. Greenaway, Jr.<br>Mag. Judge G. Donald Haneke<br><br>**DECLARATION OF CHARLES B. WOLF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** |

CHICAGO/#1367035.1

# NOVARTIS CONSUMER HEALTH

# FORT WASHINGTON HOURLY EMPLOYEES' PENSION PLAN

# ORIGINALLY EFFECTIVE JANUARY 1, 1990

As Amended And Restated Effective January 1, 1997
(Except as Specifically Provided Otherwise)

CHICAGO/#51952.5

   (a) an employee is directly or indirectly paid or entitled to payment by the Company or an Affiliated Company for the performance of employment duties or

   (b) back pay, irrespective of mitigation of damages, is either awarded or agreed to, or

   (c) an employee is directly or indirectly paid or entitled to payment by the Company or an Affiliated Company on account of a period of time during which no duties are performed due to vacation, holiday, illness, incapacity (including disability) jury duty, lay-off, leave of absence, or military duty, or

   (d) an employee is on Total Disability.

  An Hour of Service shall also include each hour that constitutes part of the Employee's customary work week during any period of absence in the armed forces of the United States, provided that (1) such absence is with the approval of the Company or pursuant to a national conscription law, (2) the Employee receives an honorable discharge, and (3) the Employee returns to employment with the Company within 90 days after his release from active service or any longer period during which his right to reemployment is protected by law.

  There shall be excluded from the foregoing those periods during which Payments are made or due under a plan maintained solely for the purpose of complying with applicable workers' compensation, unemployment compensation, or disability insurance laws. No more than 150 Hours of Service shall be credited under Subsection (c) on account of any single continuous period during which no duties are performed except to the extent otherwise provided in this Plan. An Hour of Service shall not be credited where an Employee is being reimbursed solely for medical or medically related expenses.

  No Hours of Service shall be credited twice. Hours of Service shall be credited in accordance with the rules set forth U.S. Department of Labor Reg. §2530.200b-2(b) and (c).

  1.19 "<u>Late Retirement Date</u>" shall mean the first day of the calendar month coincident with or next following the day on which a Participant's employment with the Company and all Affiliated Companies has ceased after the Participant's Normal Retirement Date.

  1.20 "<u>Normal Retirement Date</u>" shall mean the first day of the calendar month coincident with or next following the Participant's retirement upon the later of the attainment of age 65 or the fifth anniversary of the Participant's commencement of participation in the Plan ("Normal Retirement Age").

  1.21 "<u>Participant</u>" shall mean an Employee entitled to participate in this Plan, a former Employee receiving benefits under the Plan, a former Employee who has been transferred out of Employee Status and who continues to be employed by the Company or an Affiliated Company, and a former Employee whose employment with the Company and all Affiliated Companies has ceased with vested rights under the Plan.

  1.22 "<u>Plan</u>" shall mean the Rhône-Poulenc Rorer Pharmaceuticals Inc. Fort Washington Hourly Employees' Pension Plan, effective until December 31, 1994, the Ciba Self-

3

Medication Fort Washington Hourly Employees' Pension Plan, effective until December 31, 1996, and the Novartis Consumer Health, Inc. Fort Washington Hourly Employees' Pension Plan effective January 1, 1997, as set forth herein and as hereafter amended from time to time.

1.23 "Plan Year" shall mean a twelve month period which shall commence each January 1 and end on the next following December 31.

1.24 "QDRO" shall mean a qualified domestic relations order within the meaning of section 206(d)(3)(B) of ERISA and section 414(p) of the Code.

1.25 "Required Distribution Date" means April 1 of the calendar year following the later of (a) the calendar year in which the Participant attains age 70½; or (b) in the case of a Participant who attained age 70½ after July 1, 1998, and who is not a 5% owner (within the meaning of section 416(i) of the Code).

1.26 "Social Security Retirement Age" means (a) for any person born before January 1, 1938, age 65, (b) for any person born after December 31, 1937, but before January 1, 1955, age 66, and (c) for any person born after December 31, 1954, age 67.

1.27 "Special Early Retirement Date" means the first day of the month coincident with or immediately following the date a Participant retires prior to his Normal Retirement Date pursuant to the provisions of Section 4.5.

1.28 "Spouse" shall mean the person to whom a Participant is married on the applicable date.

1.29 "Total Disability" shall mean a Participant's suffering a disability of a nature which enables the Participant to qualify for and to receive disability benefits under the Federal Social Security Act.

1.30 "Trust Agreement" shall mean the agreement and declaration of trust executed under this Plan.

1.31 "Trustee" shall mean the corporate trustee or one or more individuals collectively appointed and acting under the Trust Agreement.

1.32 "Union Plan" shall mean the Warehouse Employees' Union Local 169 and Employers' Joint Pension Plan.

1.33 "Years of Credited Service" shall mean the number of full and partial Plan Years counted with respect to determining an Employee's Accrued Benefit under the Plan, as further described in Article III.

1.34 "Years of Excess Credited Service" shall mean those Years of Credited Service in excess of the greater of (a) twenty (20), or (b) Years of Credited Service at a Participant's Special Early Retirement Date.

    (1) the date the Committee finds, on the basis of medical evidence, that the Participant is no longer of Total Disability as defined in Section 1.29

    (2) the date the Participant refuses to submit to any medical examination requested by the Committee;

    (3) the Participant's death; or

    (4) the Participant's Normal Retirement Date.

  A Disability retirement benefit payable to a Participant under this Section shall be disregarded in determining a Participant's Annuity Starting Date.

  (b) The Committee may direct that any former Employee receiving Total Disability benefits shall be reexamined without expense to him from time to time prior to his Normal Retirement Date, but not more than twice in any Plan Year, to determine if Total Disability continues to exist. Benefits hereunder shall terminate at any time that the former Employee ceases to be disabled, prior to his Normal Retirement Date, under this Section. Failure to submit to such reexamination shall be cause for termination of Total Disability benefits hereunder.

  (c) In the event of the Participant's recovery from his Total Disability before his Normal Retirement Date, the Participant shall be entitled to a deferred vested benefit payable in accordance with the provisions of Article V, reduced to reflect the Actuarial Equivalent of the value of the prior payment of Total Disability retirement benefits.

  4.4 Late Retirement Benefit. A Participant who retires from the employ of the Company after his Normal Retirement Date shall be entitled to a monthly retirement benefit determined in accordance with Section 4.1 above, as of his Late Retirement Date, reduced by the Actuarial Equivalent Value of benefits already distributed to the Participant by reason of section 401(a)(9) of the Code, in accordance with Section 4.10 hereof.

  4.5 Special Early Retirement Benefits.

  (a) A Participant who has (1) completed thirty (30) Years of Credited Service, (2) completed twenty (20) Years of Credited Service and attained his fifth-seventh (57th) birthday, or (3) completed ten (10) Years of Credited Service and attained his sixty-second (62nd) birthday may retire prior to his Normal Retirement Date and elect in writing, no earlier than 90 days prior to his Annuity Starting Date and in no event earlier than the date he receives the explanation described in Section 7.2(d), to receive, in lieu of the benefit starting as of his Normal Retirement Date a Special Early Retirement Benefit commencing on his Special Early Retirement Date equal to a monthly retirement benefit determined in accordance with Section 4.1, unreduced pursuant to Section 4.2(a) on account of early commencement; provided, however, that the reduction pursuant to Section 4.2(b) shall apply.

  (b) A Vested Terminated Participant under Section 5.2: (1) who was actively employed by the Company on October 15, 1996; (2) whose employment is terminated as a result of the transfer or elimination of production at the Fort Washington plant and/or the movement of

said production to the Lincoln, Nebraska facility; (3) who subsequently would have satisfied the requirements of subsection (a) above prior to his Normal Retirement Date if he had remained employed by the Company; (4) is at least 57 years of age as of the date of commencement of his retirement benefits; and (5) has not previously elected an Early Retirement Benefit under Section 4.2 may retire prior to his Normal Retirement Date and elect in writing, no earlier than 90 days prior to his Annuity Starting Date and in no event earlier than the date he receives the explanation described in Section 7.2(4), to receive, in lieu of the benefit starting as of his Normal Retirement Date, a Special Early Retirement Benefit commencing on his Special Early Retirement Date equal to his Accrued Benefit (determined in accordance with Section 1.1), unreduced pursuant to Section 4.2(a) on account of early commencement; provided, however, that the reduction pursuant to Section 4.2(b) shall apply. The Accrued Benefit of a Participant who elects a Special Early Retirement Benefit under this subsection (b) will be based on his Years of Credited Service, in years and completed months thereof, as of his termination of employment (which will not be extended from that date to incorporate payments for severance, accrued vacation or any other payment from the Company resulting from periods of employment prior to the date of termination or permanent layoff).

  4.6 Termination of Employment Benefits. A Participant shall be entitled to benefits upon termination of employment as set forth in Article V.

  4.7 Pre-Retirement Death Benefits. A Participant's surviving Spouse shall be entitled to benefits upon the death of the Participant in accordance with Article VI.

  4.8 Furnishing Data. Each Employee and beneficiary shall furnish such information as the Committee may consider necessary for the determination of the Employee's rights and benefits under the Plan and shall otherwise cooperate fully with the Committee in the administration of the Plan. Benefit commencement shall be deferred until all of such information is provided.

  4.9 Suspension of Benefits on Reemployment.

   (a) (1) In the event that a Participant is employed in qualified reemployment, the benefits otherwise payable to the Participant shall be suspended before his Required Distribution Date for each calendar month in which he continues his qualified reemployment. In addition, no benefits shall be paid during the qualified reemployment of a Participant who continues in the employ of the Company or an Affiliated Company after his Normal Retirement Date and before his Required Distribution Date. The rules relating to such a suspension of benefits and their subsequent resumption are described in this Section.

    (2) The Committee shall notify the Participant by personal delivery or first class mail of the suspension of his benefits during the first month in which such suspension of benefits occurs.

    (3) Each Participant receiving benefits under the Plan shall be required to give notice to the Committee of any employment relationship which such Participant has with the Company or any Affiliated Company. The Committee shall have the right to

12

# ARTICLE V

## BENEFITS UPON TERMINATION OF EMPLOYMENT

5.1     <u>Benefit on Termination Prior to Retirement</u>.  In the event of the termination of a Participant's active participation for any reason other than his death or retirement under the Plan, he shall be entitled to a monthly retirement benefit equal to his Accrued Benefit only if he has completed five (5) Years of Service.  Notwithstanding the foregoing, a Participant shall be fully vested in his interest in the Plan on the later of (i) the date on which he attains his 65th birthday or (ii) the fifth anniversary of his commencement of participation in the Plan.  The computation of a Participant's nonforfeitable percentage of his interest in the Plan shall not be reduced as the result of any direct or indirect amendment to this Section 5.1.  In the event that the Plan is amended to change or modify any vesting schedule, a Participant with at least three (3) years of Vesting Service as of the expiration date of the election period may elect to have his nonforfeitable percentage computed under the Plan without regard to such amendment.  If a Participant fails to make such election, then such Participant shall be subject to the new vesting schedule.  The Participant's election period shall commence on the adoption date of the amendment and shall end 60 days after the latest of:

        (i)     the adoption date of the amendment,

        (ii)    the effective date of the amendment, or

        (iii)   the date the Participant receives written notice of the amendment from the Company or the Retirement Committee.

5.2     <u>Commencement of Benefits to Vested Terminated Participants</u>.  A Participant who is entitled to the benefit under Section 5.1 shall hereinafter be referred to as a "Vested Terminated Participant."  The monthly retirement benefit of a Vested Terminated Participant who is living on his Normal Retirement Date shall be payable in accordance with Article VII, commencing on the Normal Retirement Date, subject to the provisions of Section 4.9.  A Vested Terminated Participant who has or subsequently meets the requirements for an Early Retirement Benefit as provided in Section 4.2 may elect to commence receiving benefits at any time following his termination of employment and prior to his Normal Retirement Date, in which event the benefit payable shall be the Actuarial Equivalent Value of his Accrued Benefit.

15

# EXHIBIT B

Christopher G. FitzPatrick (CF-8678)
Paul L. Kattas (PK-6222)
KELLEY DRYE & WARREN LLP
200 Kimball Drive
Parsippany, New Jersey 07054
Telephone: (973) 503-5930
Facsimile: (973) 503-5950

Charles B. Wolf (CBW-2850)
Philip L. Mowery (PLM-6925)
Alison J. Maki (AJM-3852)
VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.
222 North LaSalle Street
Suite 2600
Chicago, Illinois 60601
Telephone: (312) 609-7500
Facsimile: (312) 609-5005

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| FREDERICK J. HAESLER, JR.<br>111 Orleman Avenue<br>Oreland, PA 19075 | : Civil Action No. 2:05-cv-00372-<br>: JAG-GDH<br>: Judge Joseph A. Greenaway, Jr. |
| SANDREENA<br>2225 Carlson Drive<br>Willow Grove, PA 19090-2212 | : |
| WANDA BREWSTER<br>700 Lower State Road<br>Building 10 - Apt B-7<br>North Wales, PA 19454 | : |

TERESA TALESE  
220 Rosemary Avenue  
Ambler, PA 19002, and

JANET THOMAS  
1375 Fitzwatertown Road  
Roslyn, PA 19001

for themselves and all others similarly situated,

        Plaintiffs,

  v.

NOVARTIS CONSUMER HEALTH, INC.  
  f/k/a Ciba Self Medication, Inc.  
200 Kimball Drive  
Parsippany, NJ 07054-2173

CIBA SELF-MEDICATION FT. WASHINGTON HOURLY EMPLOYEES PENSION PLAN  
  a/k/a Novartis Corporation Fort Washington Hourly Employees' Pension Plan  
200 Kimball Drive  
Parsippany, NJ 07054-2173

        Defendants.

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

# EXHIBIT "2"

## INITIAL PARTICIPATION AT AGE 28

| Years of Credited Service | Accrued Benefit Under Section 1.1 | Minimum Required Fractional Accrual | Satisfy Fractional Rule (Y/N) |
|---|---|---|---|
| 1 | $31.24 | $31.24 | Y |
| 2 | $62.49 | $62.49 | Y |
| 3 | $93.73 | $93.73 | Y |
| 4 | $124.97 | $124.97 | Y |
| 5 | $156.22 | $156.22 | Y |
| 6 | $187.46 | $187.46 | Y |
| 7 | $218.70 | $218.70 | Y |
| 8 | $249.95 | $249.95 | Y |
| 9 | $281.19 | $281.19 | Y |
| 10 | $312.43 | $312.43 | Y |
| 11 | $343.68 | $343.68 | Y |
| 12 | $374.92 | $374.92 | Y |
| 13 | $406.16 | $406.16 | Y |
| 14 | $437.41 | $437.41 | Y |
| 15 | $468.65 | $468.65 | Y |
| 16 | $499.89 | $499.89 | Y |
| 17 | $531.14 | $531.14 | Y |
| 18 | $562.38 | $562.38 | Y |
| 19 | $593.62 | $593.62 | Y |
| 20 | $624.86 | $624.86 | Y |
| 21 | $656.11 | $656.11 | Y |
| 22 | $687.35 | $687.35 | Y |
| 23 | $718.59 | $718.59 | Y |
| 24 | $749.84 | $749.84 | Y |
| 25 | $781.08 | $781.08 | Y |
| 26 | $812.32 | $812.32 | Y |
| 27 | $843.57 | $843.57 | Y |
| 28 | $874.81 | $874.81 | Y |
| 29 | $916.00 | $906.05 | Y |
| 30 | $946.00 | $937.30 | Y |
| 31 | $976.00 | $968.54 | Y |
| 32 | $1,006.00 | $999.78 | Y |
| 33 | $1,036.00 | $1,031.03 | Y |
| 34 | $1,066.00 | $1,062.27 | Y |
| 35 | $1,096.00 | $1,093.51 | Y |
| 36 | $1,126.00 | $1,124.76 | Y |
| 37 (age 65) | $1,156.00 | $1,156.00 | Y |

# EXHIBIT C

Christopher G. FitzPatrick (CF-8678)
Paul L. Kattas (PK-6222)
KELLEY DRYE & WARREN LLP
200 Kimball Drive
Parsippany, New Jersey 07054
Telephone: (973) 503-5930
Facsimile: (973) 503-5950

Charles B. Wolf (CBW-2850)
Philip L. Mowery (PLM-6925)
Alison J. Maki (AJM-3852)
VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.
222 North LaSalle Street
Suite 2600
Chicago, Illinois 60601
Telephone: (312) 609-7500
Facsimile: (312) 609-5005

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| FREDERICK J. HAESLER, JR.<br>111 Orleman Avenue<br>Oreland, PA 19075<br><br>SANDREENA<br>2225 Carlson Drive<br>Willow Grove, PA 19090-2212<br><br>WANDA BREWSTER<br>700 Lower State Road<br>Building 10 - Apt B-7<br>North Wales, PA 19454 | Civil Action No. 2:05-cv-00372-JAG-GDH<br><br>Judge Joseph A. Greenaway, Jr. |

TERESA TALESE  
220 Rosemary Avenue  
Ambler, PA 19002, and

JANET THOMAS  
1375 Fitzwatertown Road  
Roslyn, PA 19001

for themselves and all others similarly situated,

        Plaintiffs,

  v.

NOVARTIS CONSUMER HEALTH, INC.  
  f/k/a Ciba Self Medication, Inc.  
200 Kimball Drive  
Parsippany, NJ 07054-2173

CIBA SELF-MEDICATION FT. WASHINGTON HOURLY EMPLOYEES PENSION PLAN  
  a/k/a Novartis Corporation Fort Washington Hourly Employees' Pension Plan  
200 Kimball Drive  
Parsippany, NJ 07054-2173

        Defendants.

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING CONVERSION TO MOTION FOR SUMMARY JUDGMENT**

### 2. Age-Based Reductions (Count I)[2]

As noted in Defendants' initial brief, under ERISA and the IRC, a plan may not cause a participant's benefit accruals to cease, or the rate of benefit accrual to decrease, on account of the participant's increasing age (Def. Br. at 21). ERISA §204(b)(1)(H), 29 U.S.C. §1054(b)(1)(H); I.R.C. §411(b)(1)(H), 26 U.S.C. §411(b)(1)(H). Beginning with the supplemental briefing, Plaintiffs have decided to argue that one reason the Plan's formula violates this provision of ERISA is because the annual benefit accrual is smaller for younger participants than for relatively older participants (Pl. Supp. Br. at 2-4; Pl. Supp. Reply Br. at 3-5). However, Plaintiffs have cited no remotely relevant authority for such a novel proposition, and as Defendants have previously shown, the argument runs counter to the provisions of ERISA and other statutes that protect relatively older participants (Def. Supp. Resp. Br. at 3-5). Thus, Plaintiffs have not shown and cannot show that this aspect of the Plan's benefit formula violates anything.

Plaintiffs also now incorrectly assert that Defendants "admit" a violation of ERISA Section 204(b)(1)(H), because the benefit accrual in the year after attainment of the Special Early Retirement Date is lower than in the year before attainment of that date (Pl. Supp. Br. at 1; Pl. Second Supp. Br. at 3). For the

---

[2] Defendants have addressed Count I at the following places in prior briefs: Initial Br. at 13-23; Reply Br. at 10-12; Supp. Resp. Br. at 3-5).

- 9 -